IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WP COMPANY LLC**<br>**d/b/a THE WASHINGTON POST**,<br><br>                 Plaintiff,<br><br>v.<br><br>**DEPARTMENT OF VETERANS AFFAIRS**,<br>*et al.*,<br><br>                 Defendant. | Case No. 1:24-cv-02661-AHA |

<u>**Status Report**</u>

Pursuant to the Court's June 30, 2025 Minute Order and its Standing Order, Plaintiff WP Company LLC d/b/a The Washington Post (the "*Post*") respectfully submits this status report.

**I.    Response to the Defendants' Baseless Statements in their Unopposed Motion to Extend Time, Filed This Evening**

As the Defendants' filing notes, the *Post* does not oppose the extension the Defendants requested, in their 9:22 p.m. filing tonight, to extend the deadline for a Joint Status Report until this Tuesday, July 29, 2025. *See* ECF No. 36. Defendants' motion, however, contains several inaccurate representations requiring a brief response. <u>First</u>, the *Post* did not tell the Defendants that the *Post* "cannot agree to wait to present its issues to the Court today and that it plans to file a unilateral status report[.]" *Id.* at 1. Instead, the *Post*, in agreeing to the extension, reminded government counsel that the Court has ordered the parties to file a status report today, and because the *Post* will not disobey the Court's order, absent a granting of the extension motion tonight, the *Post* would proceed to file a status report in obedience of the Court's order. <u>Second</u>, contrary to the VA's claim that the *Post*'s status report raises myriad novel issues, a comparison of this report with the June 20, 2025 Joint Status Report makes clear that the *Post*, in the status

report below, is adhering to the same positions, many of which remain unresolved, that the parties have already jointly discussed and reported on to the Court, *see* ECF No. 34, and the *Post*'s status report also updates the Court on the VA's most recent productions, which also is not new information to the Defendants. Third, the *Post*'s requests for a briefing schedule for summary judgment pertain to issues that the parties have agreed they are at impasse over, and they have been for a number of weeks. The VA could have prepared its position statements on these issues in the time it took to send lengthy emails to *Post* counsel today and to prepare their 9:22 p.m. motion to extend time.

The *Post* has worked diligently to try to narrow the issues with Defendants. But as the report below reflects, after months of discussions, many promises Defendants have made remain unfulfilled, many questions the *Post* has asked to understand the Defendants' shifting positions remain unanswered, the issues over which the parties have reached impasse require the Court's assistance, and their resolution on summary judgment will aid the Court and the parties in trying to reach the conclusion of this litigation.

**II.     Status of Plaintiff's FOIA Requests**

    **A.     Request No. 1.**

On May 30, 2024, the *Post* submitted a FOIA request to the VA seeking "The Board of Veterans' Appeals Decisions database. The request is for all tables and all fields within each table in the database. This request is for an electronic copy or extract of data in a standard, machine-readable data format."

The parties spent several months identifying the responsive data in the agency's possession. At first, it appeared to the *Post* that the responsive data may have been previously posted online. During the parties' April 29, 2025, conference, however, the VA informed the *Post* that the information available at that link discloses only the text of decisions of the Board of

Veterans' Appeals, which is but one component of the "all tables and all fields within each table" in the VA's databases concerning Board of Veterans' Appeals Decisions. Those are the "VACOLS" and "Caseflow" databases. The *Post* maintains that data from VACOLS and Caseflow systems is the information sought by its request "for all tables and all fields within each table in the database."

Until the VA abruptly halted the parties' discussions on June 20, 2025, the parties were progressing toward resolution on this request. On May 13, 2025, the VA provided the *Post* with data dictionaries for the VACOLS and Caseflow systems. On May 22, 2025, the *Post* requested that the VA disclose (1) data from 11 of 21 VACOLS data sets and (2) data from 57 of 131 of the Caseflow data sets. The VA never informed the *Post* whether any part of the proposal was acceptable to the VA. Instead, during the June 12 Conference, the VA said it was still evaluating the proposal and asked the *Post* to reconsider its scope. The *Post* explained that without additional information from the VA regarding the databases' structure and how they were linked, the *Post* could not know if narrowing its request further would result in losing the ability to track cases across the databases—for example, to track whether particular veterans had multiple cases.

In the June 20, 2025 Joint Status Report, the VA asserted for the first time that it "believes it has reached an end in fruitful settlement negotiations over Request No. 1 and will respond completely to the request with the text searchable decisions maintained in the Board of Veterans' Appeals Decision database only," which the VA said it would release "*by July 21, 2025*" (emphasis supplied). The VA *still* has not provided those records, nor has it reconsidered its position that it need not disclose anything beyond a single, narrow part of the "all tables and all fields within each table" that the *Post* requested.

3

The *Post* asks the Court to order the VA either to disclose, by August 15, 2025, the full set of data the *Post* requested on May 22, 2025, or identify for the *Post* which specific fields it believes are exempt from disclosure and release the remainder. In the alternative, if the Court does not order this disclosure, the Court should order the parties to submit a briefing schedule for summary judgment on any dispute as to the scope of the request and any claims of exemption for records responsive to this request by August 8, 2025.

B.      **Request No. 2.**

On June 6, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Reports of Investigation from the Office of Inspector General's Criminal Division concerning the following educational institutions, their employees and/or students" at 24 institutions the *Post* named in the request.

The VA has (1) disclosed to the *Post* material concerning 16 of the 24 investigations implicated in this request, (2) asserted that three of the 24 case files cannot be located, and (3) represented that five of the 24 cases remain open.

**Closed investigations.** On June 24, 2025, the VA released 141 pages pertaining to one investigation, on which it had not previously released any records, and 1,249 additional pages from another investigation. The cover letter accompanying this release stated that the VA is "still reviewing investigative records for possible release," but did not specify which investigations, how many records, or when they might be released.

The *Post* requests that the Court order the VA to provide that information within 10 days of its order.

**Allegedly open investigations.** On June 16, 2025, the *Post* provided the VA information demonstrating that two of the five criminal cases the VA describes as open are, in fact, closed

4

(*i.e.*, the relevant defendants have all pleaded guilty and there are no pending appeals). In the June 20 Joint Status Report, the VA claimed that one of those cases is open, and that it was still confirming whether the second case is closed. The VA has not provided the *Post* with any update on its position as to the second case, or with any information demonstrating how the cases are closed given the defendants' guilty pleas and lack of appeals.

The *Post* requests that the Court order the VA to provide that information within 10 days of its order.

**Referrals to other agencies.** The VA has to date withheld hundreds of pages of responsive material that was referred to other agencies for review. The *Post* has repeatedly objected to those referrals. During the June 12 Conference and in the June 20 Joint Status Report, the VA asserted that, in addition to 13 outstanding referrals, it is also using "consultations" with other agencies. The VA has not provided a timeframe for completion of those referrals or consultations, or for determinations of whether the VA believes any of the material is exempt from disclosure. The VA appears prepared not to directly process and respond to the hundreds of pages of material it referred to other agencies. The *Post* has repeatedly explained to the VA that it cannot avoid its obligation to disclose public records in this way. *See, e.g.*, *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) ("Because the agency who received the FOIA request . . . is the agency ultimately responsible for responding to the request, the agency is not absolved of its obligations under FOIA when it refers the documents elsewhere."); *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998); *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) ("[W]hen an agency receives a FOIA request for "agency records" in its possession, it must take responsibility for processing the request. It cannot simply refuse to act on the ground that the documents originated elsewhere.").

The *Post* requests that the Court order the VA to provide information on the timeframe for completion of these referrals and consultations within 10 days of its order.

**Disputes arising from disclosed material.** The parties have agreed to defer disputes over the *Post*'s objections to material redacted or otherwise withheld from the disclosures made to date until the VA completes its production of material responsive to the non-database requests.

The *Post* asks the Court to order the VA to disclose all nonexempt public records responsive to this request by August 15, 2025, and to provide the above requested information within 10 days of the Court's order. The Court should also order the parties to submit another status report on August 15, 2025.

C.   **Request No. 3.**

On June 17, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Reports of Investigation from the Office of Inspector General's Criminal Division concerning [20 named] individuals suspected of fraudulently applying for and receiving disability benefits from the VA." The FOIA request included a request for attachments and any audio or video recordings made during interviews and surveillance operations.

The VA has disclosed documentary material concerning 18 of the 20 investigations implicated by this request. The VA contends that the remaining two case files pertain to open investigations. The VA noted in January 2025 that it was reviewing video recordings for potential release, but it has not disclosed any recordings or photos in response to this request or asserted that the material is exempt from disclosure.

**Allegedly open investigations.** On June 16, 2025, the *Post* provided the VA information demonstrating that the two allegedly open cases are, in fact, closed. The VA has disputed that

6

those two cases are closed, but has not provided any records supporting this contention, and the publicly available case files on PACER show otherwise.

**Disputes arising from disclosed material.** The parties have agreed to defer disputes over the *Post*'s objections to material redacted or otherwise withheld from the disclosures made to date until the VA completes its production of material responsive to the non-database requests.

The *Post* asks the Court to order the VA to disclose all nonexempt public records responsive to this request by August 15, 2025. The Court should also order the parties to submit another status report on August 15, 2025.

D.      **Request No. 4.**

On June 24, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Veterans Benefits Administration's database of complaints submitted via the VA GI Bill Feedback Tool, as well as via other sources, regarding schools and employers."

During the June 12 Conference and in the June 20 Joint Status Report, the VA asserted that the data responsive to this request includes complainant-provided narrative descriptions of allegations against GI Bill institutions, which the VA will not disclose. The *Post* disputed that nondisclosure of that information is lawful, and asked the VA for an example of the material at issue. The VA declined to provide one. Additionally, the VA declined to commit to providing its position on which of the 55 fields in the database it believes are exempt from disclosure—other than the two narrative description fields, and an unspecified number of fields containing identifying information. The *Post* requested that the VA do so, and confirmed that it was not requesting disclosure of Social Security Numbers.

The VA's invocation of Exemption 3 and 38 U.S.C. § 5701 to withhold material responsive to this request (and others) is misplaced. FOIA Exemption 3 applies only when the

7

cited statutory basis for nondisclosure provides the agency "no discretion on the issue" of whether it may disclose information or when the statute "establishes a particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). It cannot shield the requested material here because 38 U.S.C. § 5701 expressly allows the Secretary of the VA—"as a matter of discretion"—to allow for inspection of or to disclose "Department records" and "information." *See* 38 U.S.C. § 5701(d)-(e); *see also* 38 C.F.R. §§ 1.501 (providing by regulation that VA may, in the discretion of Secretary or Deputy Secretary, release information).

The *Post* asks the Court to order the VA to disclose all nonexempt public records responsive to this request by August 15, 2025. In the alternative, if the Court does not order this disclosure, the Court should order the parties to submit a briefing schedule for summary judgment on any claims of exemption for records responsive to this request by August 8, 2025.

**E.     Request No. 5.**

On June 13, 2024, the *Post* submitted a FOIA request to the VA seeking the disclosure of data from the VBA's GI Bill Comparison Tool.

On July 14, 2025, the VA disclosed the data it possesses that is responsive to this request. The VA withheld the names, phone numbers, and email addresses of school certifying officials under FOIA Exemption 6. *See* 5 U.S.C. § 552(b)(6). On July 18, 2025, the *Post* requested a data dictionary for the records released by the VA in response to this request, as the version available from the VA's website does not contain all of the fields. On July 24, 2025, the VA responded that a data dictionary would not be responsive to Request No. 5 and that, in any event, it does not have a data dictionary corresponding to the additional fields. Accordingly, the VA has finished releasing records in response to this request.

F.    **Request No. 6.**

On September 23, 2024, the *Post* submitted a FOIA request to the VA seeking copies of correspondence sent since January 1, 2019, "from the VA's Office of General Counsel . . . notifying individuals, companies or other entities that they may be engaged in illegal activities."

The VA previously represented that it has reviewed all records responsive to this request. Of the 1,224 pages it has identified as responsive, the VA has fully withheld 214 pages of material and redacted 422 pages. The parties disagree about the propriety and applicability of the FOIA exemptions that VA has cited in support of its non-disclosures. During the May 28 Conference, the parties agreed to table the dispute over this request while they try to advance other matters at issue in this case.

G.    **Request No. 7.**

On September 23, 2024, the *Post* submitted a FOIA request to the VA seeking "Reports of Investigation (video and photographic portions only) from the Office of the Inspector General concerning [ten named people] who were criminally investigated on suspicion of fraudulently receiving disability benefits from the VA."

On June 27, 2025, the VA disclosed 99 videos responsive to this request, corresponding to four of the ten cases. The VA had previously disclosed 273 pages of photographs responsive to this request, and it possesses approximately 17 hours of responsive footage.

**Cases without recordings.** On June 27, 2025, the VA stated that for three of the cases, it had no video or audio recordings. Yet publicly available court filings in each of those cases reflect that videos were played in open court. Further, in November 2024, the U.S. Attorney's Office for the Western District of Michigan, which prosecuted one of the cases, provided the *Post* with six of the videos admitted as exhibits at trial. The *Post* provided the VA with this

9

information in a letter on June 27, 2025, explaining that the VA's response conflicted with the publicly available dockets. This suggests that the VA has not met its duty to adequately search for responsive records. *See, e.g.*, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.") (citation omitted). The *Post* requested a prompt explanation as to why the VA claims it has no responsive records, including what the VA did to search for responsive records, and whether the VA's position is that the responsive records have been transferred to the National Archives and Records Administration ("NARA") due to their age. The *Post* has not received any such response.

**Consultations.** On June 27, 2025, the VA stated that it was consulting with the Veterans Health Administration ("VHA") on 46 additional videos, which depict Compensation and Pension ("C&P") exams, in five of the cases. The *Post* has repeatedly explained to the VA, including in the June 20 Joint Status Report and its June 27 letter, that it cannot avoid its obligation to disclose public records in this way. *See supra* at 5. The *Post*'s June 27 letter also requested that the VA promptly provide a date certain for the completion of the VHA's consultations and for the release of these 46 videos. The VA has not done so.

**Remaining records.** The VA stated that it has located and is reviewing one additional video responsive to this request, from which it would release any non-exempt parts by July 25, 2025, but it did not do so. The VA had also represented in the June 20 Joint Status Report that by July 17, 2025 it would complete its review of the remaining secondary priority videos and by that date either disclose the footage or notify the *Post* of the basis for any nondisclosure. The *Post* has not received these records or a date certain for their release.

The *Post* asks the Court to order the VA to disclose all nonexempt public records responsive to this request by August 15, 2025. The Court should also order the parties to submit another status report on August 15, 2025.

### H. Request Nos. 8-9.

On May 30, 2024, the *Post* submitted a FOIA request to VA seeking an electronic copy, or an extract of data in a standard, machine-readable data format, of VBA's "master Corporate database" and "for all tables and all fields within each table in the database." Also on May 30, 2024, the *Post* submitted a FOIA request to VA seeking an electronic copy, or an extract of data in a standard, machine-readable data format, of the VBA's "VETSNET mini master file" and "for all tables and all fields within each table in the database."

On May 22, 2025, in an effort to narrow this dispute, the *Post* made substantial concessions relating to these two requests and proposed that both of them could be satisfied by production of a limited amount of VETSNET data. Specifically, the *Post* proposed that disclosure of certain identified fields from five VETSNET tables would resolve these requests. The *Post*'s proposal also reiterated its prior offer to narrow the dataset further by agreeing to exclude data concerning claims or payments made before 2001, and the *Post* has said it is willing to allow the VA to withhold from disclosure data reflecting claimants' names, addresses, Social Security Numbers, and dates of birth.

During the June 12 Conference, the VA for the first time stated that the dataset-describing document it gave the *Post* in November 2024 to guide efforts to narrow the requests may not actually describe the VETSNET data as it is currently maintained by the VA. The VA asserted that it needed to further review the material and would update the *Post*, at an unspecified time, about whether the data-identifying material it previously provided the *Post* is accurate and

11

about the VA's response to the *Post*'s proposal to satisfy these requests. The VA still has not provided any update.

The *Post* asks the Court to order the parties to submit another status report on August 15, 2025.

I.      Request No. 10.

On October 10, 2024, the *Post* submitted a FOIA request to EOUSA seeking a "video compilation exhibit . . . introduced in open session and admitted into evidence by the U.S. Attorney's Office for the Northern District of Georgia" during a July 25, 2019, proceeding in *United States v. Kinsley Kilpatrick*, No. 1:18-cr-201 (N.D. Ga.).

On June 27, 2025, the VA released three videos responsive to Request No. 10. These videos were also responsive to Request No. 7. These three video clips, however, total only about *one* minute in length. Yet the video compilation exhibit the *Post* sought in Request No. 10 was about *15 minutes* long, according to the publicly available transcript of the Kilpatrick sentencing hearing. On June 27, 2025, the *Post* sent the VA a letter requesting a prompt explanation as to the status of the remaining 14 minutes of video responsive to Request No. 10, and attaching the relevant portion of the transcript. As the *Post* explained, the video footage responsive to this narrow request was played in open court, expressly described in the *Post*'s request, and the EOUSA in March promised to disclose the video "within 60 days." There is no lawful justification for withholding any of the footage from disclosure or to further delay production to review it for potential redactions.

The VA states that it has located and is reviewing one additional video responsive to this request, from which it said it would release any non-exempt parts by July 25, 2025. The VA has not done so. It is unclear whether this video accounts for the remainder of the 15 minutes. To the

extent it does not account for the full 15 minutes and the VA claims it has no additional footage in its possession, the *Post* requests a prompt explanation as to the basis for this contention, including what the VA and EOUSA did to search for responsive records, and whether the VA's position is that the responsive records have been transferred to the National Archives and Records Administration ("NARA") due to their age. The *Post* also requests a response from the VA as to whether any additional videos related to the *Kilpatrick* case are currently being reviewed for release in response to Request Nos. 7 and/or 10, including those out for consultation or referral.

The *Post* asks the Court to order the VA to disclose the remaining video footage responsive to this request by August 15, 2025. In the alternative, if the Court does not order this disclosure, the Court should order the parties to submit a briefing schedule for summary judgment on the adequacy of the search and any claims of exemption for records responsive to this request by August 8, 2025.

### III.    Request for Production Order, Briefing Schedule and Further Joint Status Reports

Entry of production orders and orders requiring frequent status reports is appropriate and commits the parties to advancing this case and clarifying the issues in dispute. Moreover as to two requests, summary judgment disposition on keystone issues will assist the parties in moving this case toward conclusion. The *Post* therefore requests that the Court:

- Order, in connection with **Request No. 1**, that by August 15, 2025, the VA either disclose the full set of data the *Post* requested on May 22, 2025, or identify for the *Post* which specific fields it believes are exempt from disclosure and information about whether and how the two databases are linked or cross-referenced; or if the Court does not order this disclosure, that it instead order the parties to submit a briefing schedule for summary judgment on any dispute as to the scope of the

- request and any claims of exemption for records responsive to this request by August 8;

- Order the VA to disclose, by August 15, 2025, all public records responsive to **Requests Nos. 2 and 3** and to identify the grounds for all nondisclosure of material claimed to be exempt;

- Order the VA to disclose all nonexempt public records responsive to **Request No. 4** by August 15, 2025; or, if the Court does not order this disclosure, that it instead order the parties to submit a briefing schedule for summary judgment on any claims of exemption for records responsive to this request by August 8, 2025;

- Order the VA to disclose all material responsive to **Request No. 7** and to identify the grounds for all nondisclosure of material claimed to be exempt, as well as information on the VA's search and the status of its referrals or consultations, by August 15, 2025;

- Order the VA to respond, by August 15, 2025, to the *Post*'s proposal regarding **Request Nos. 8-9**;

- Order the VA or EOUSA to disclose the remaining video footage responsive to **Request No. 10** by August 15, 2025; or if the Court does not order this disclosure, that it instead order the parties to submit a briefing schedule for summary judgment on the adequacy of the search and any claims of exemption for records responsive to this request by August 8.

Dated: July 25, 2025                Respectfully submitted,

*/s/ Sasha Dudding*
Charles D. Tobin (#455593)
**BALLARD SPAHR LLP**
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
tobinc@ballardspahr.com

Sasha Dudding (#1735532)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 223-0200
Facsimile: (212) 223-1942
duddings@ballardspahr.com

*Counsel for Plaintiff WP Company LLC d/b/a The Washington Post*