IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| WP COMPANY LLC<br>d/b/a THE WASHINGTON POST,<br><br>                    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF VETERANS AFFAIRS, *et al.*,<br><br>                    Defendants. | Case No. 24-cv-2661 (AHA) |

### Joint Status Report

Pursuant to the Court's August 12, 2025 Minute Order and its Standing Order, Plaintiff WP Company LLC d/b/a The Washington Post (the "*Post*") and Defendants Department of Veterans Affairs ("VA") and Executive Office for United States Attorneys ("EOUSA") respectfully submit this joint status report.

## I. Status of Plaintiff's FOIA Requests

### A.        Request No. 1.

On May 30, 2024, the *Post* submitted a FOIA request to the VA seeking "The Board of Veterans' Appeals Decisions database. The request is for all tables and all fields within each table in the database. This request is for an electronic copy or extract of data in a standard, machine-readable data format."

The *Post*'s Position

The parties spent several months identifying the responsive data in the agency's possession. At first, it appeared to the *Post* that the responsive data may have been previously posted online. During the parties' April 29, 2025, conference, however, the VA informed the

*Post* that the information available at that link discloses only the text of decisions of the Board of Veterans' Appeals, which is but one component of the "all tables and all fields within each table" in the VA's databases concerning Board of Veterans' Appeals Decisions. Those are the "VACOLS" and "Caseflow" databases. The *Post* maintains that data from VACOLS and Caseflow systems is the information sought by its request "for all tables and all fields within each table in the database."

Until the VA abruptly halted the parties' discussions on June 20, 2025, the parties were progressing toward resolution on this request. On May 13, 2025, the VA provided the *Post* with data dictionaries for the VACOLS and Caseflow systems. On May 22, 2025, the *Post* requested that the VA disclose (1) data from 11 of 21 VACOLS data sets and (2) data from 57 of 131 of the Caseflow data sets. The *Post*'s proposal would have substantially narrowed the request, cutting more than half the total data sets, in an attempt resolve the matter without further litigation. The VA never informed the *Post* whether any part of the proposal was acceptable to the VA. Instead, during the June 12 Conference, the VA said it was still evaluating the May 13 proposal and asked the *Post* to reconsider its scope. The *Post* explained that without additional information from the VA regarding the databases' structure and how they were linked, the *Post* could not know if narrowing its request further would result in losing the ability to track cases across the databases—for example, to track whether particular veterans had multiple cases.

In the June 20, 2025 Joint Status Report, the VA asserted that it "believes it has reached an end in fruitful settlement negotiations over Request No. 1 and will respond completely to the request with the text searchable decisions maintained in the Board of Veterans' Appeals Decision database only," which the VA said it would release "by July 21, 2025." Dkt. 34 at 4. In

the August 5 Joint Status Report, the VA asserted that it "would take the VA over 4 months, working non-stop, to upload all this data for transferring to Plaintiff." Dkt. 38 at 5.

On August 16, the VA emailed the *Post* a list of instructions for accessing its publicly available website containing the text of decisions of the Board of Veterans' Appeals. The VA's email ended, "this concludes VA's response to the referenced FOIA request," and "VA will no longer be producing the records to Plaintiff by separate means." The *Post* confirmed that it already had access to this website, but reiterated its position that this website contains only one component of the "all tables and all fields within each table" in the VA's VACOLS and Caseflow databases concerning Board of Veterans' Appeals Decisions.

Pursuant to the Court's August 12 Minute Order declining to set a summary judgment briefing schedule until production has ended, the *Post* respectfully submits that Request No. 1 is ripe for summary judgment when the Court does enter a briefing schedule.

<u>VA's Position</u>

The VA maintains that it has fully responded to Plaintiff's Request 1 and agrees that the parties' dispute over the sufficiency of that response is ripe for summary judgment at the appropriate time after the VA has completed its response to the other remaining FOIA requests at issue in this case. The VA also anticipates challenging, at the appropriate time, and on summary judgment, the propriety of Plaintiff's request under FOIA as a threshold matter.

As the VA previously stated in the parties' prior joint status report, there is only one place where the VA maintains all Board of Veterans' Appeals Decisions, which is available publicly, online and Plaintiff has already admitted that this publicly searchable database is the "Board of Veterans' Appeals Database" that it was seeking under Request 1. *See* Apr. 11, 2025 Jt. Status Rpt., ECF No. 28 at 1. Plaintiff had represented that the link for accessing these decisions was,

however, broken and therefore it could not access the data. The VA, thereafter, attempted to gather and produce the same database of decisions to Plaintiff—decision by decision. Finding that a working link to these decisions was still available proved much more efficient at responding to this request. Thus, on August 16, 2025, the VA provided Plaintiff with instructions for publicly accessing all data maintained in the database of Board of Veterans' Appeals decisions. The VA assured Plaintiff that "[b]y following these instructions, the Washington Post can now access VA's entire Board of Veterans' Appeals Decisions archive on its own, and VA will no longer be producing the records to Plaintiff by separate means." Unbelievably, Plaintiff now, for the first time in this status report, maintains that Plaintiff "already had access to this website."

### B.        Request No. 2.

On June 6, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Reports of Investigation from the Office of Inspector General's Criminal Division concerning the following educational institutions, their employees and/or students" at 24 institutions the *Post* named in the request.

The *Post*'s Position

The VA has (1) disclosed to the *Post* material concerning 16 of the 24 investigations implicated in this request, (2) asserted that three of the 24 case files cannot be located, and (3) represented that five of the 24 cases remain open.

**The *Post*'s position on closed investigations.** On June 24, 2025, the VA released 141 pages pertaining to one investigation, on which it had not previously released any records, and 1,249 additional pages from another investigation. The cover letter accompanying this release stated that the VA is "still reviewing investigative records for possible release," but did not specify which investigations, how many records, or when they might be released. The Court's

August 12 Minute Order directed the VA to "specify the number of records remaining to be processed for request no. 2 and provide a proposed timeline for the completion of consultations related to request nos. 2, 7 and 10" in this joint status report. The *Post* looks forward to receiving the remaining records from the below-identified investigations by September 30, 2025.

 **The *Post*'s position on allegedly open investigations.** On June 16, 2025, the *Post* provided the VA information demonstrating that two of the five criminal cases the VA describes as open are, in fact, closed (*i.e.*, the relevant defendants have all pleaded guilty and there are no pending appeals). In the August 5 Joint Status Report, the VA maintained that both cases are open, but did not provide any information explaining this conclusion given the defendants' guilty pleas and lack of appeals. The VA now states that one of the cases is closed; the *Post* looks forward to receiving the remaining records by September 30, 2025.

 **The *Post*'s position on consultations and referrals to other agencies.** The VA has to date withheld hundreds of pages of responsive material that was referred to other agencies for review. The *Post* has repeatedly objected to those referrals. During the June 12 Conference and in the June 20 Joint Status Report, the VA asserted that, in addition to 13 outstanding referrals, it is also using "consultations" with other agencies. The *Post* has repeatedly explained to the VA that it cannot avoid its obligation to disclose public records in this way. *See, e.g.*, *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) ("Because the agency who received the FOIA request . . . is the agency ultimately responsible for responding to the request, the agency is not absolved of its obligations under FOIA when it refers the documents elsewhere."); *Peralta v. U.S. Attorney's Office*, 136 F.3d 169, 175 (D.C. Cir. 1998); *McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir. 1983) ("[W]hen an agency receives a FOIA request for "agency records" in its possession, it must take responsibility for processing the request. It cannot simply refuse to act

on the ground that the documents originated elsewhere."). The VA cannot rely on DOJ internal policy, as it does here, to violate the law of this Circuit. Moreover, courts can, and do, set deadlines for an agency's completion of consultations and referrals. *See, e.g.*, Am. Order, Dkt. 97, *Leopold v. Dep't of Just.*, No. 1:19-cv-01278-RBW (D.D.C. Oct. 5, 2020).

The Court's August 12 Minute Order directed the VA to "specify the number of records remaining to be processed for request no. 2 and provide a proposed timeline for the completion of consultations related to request nos. 2, 7 and 10" in this joint status report. Although the VA below states that it has begun receiving records back from certain consultations, which it aims to produce by September 30, 2025, it does not provide a date certain for the completion of the remaining consultations, in violation of the Court's clear and specific Order. The VA appears to take the position that records will remain outstanding as of November 5, when the VA proposes submitting the next status report. The *Post* respectfully requests that the Court, again, order the VA to provide a date certain, in the near future, for the completion of these remaining consultations.

**The *Post*'s position on disputes arising from disclosed material.** The parties have agreed to defer disputes over the *Post*'s objections to material redacted or otherwise withheld from the disclosures made to date until the VA completes its production of material responsive to the non-database requests.

The *Post* asks the Court to order the VA to disclose all nonexempt public records responsive to this request by September 26, 2025. The Court should also order the parties to submit another status report on September 26, 2025.

<u>VA's Position</u>

***Response to Plaintiff's Position and Update.*** The VA respectfully refers the Court to its position statements in prior joint status reports responding to Plaintiff's complaints about this Request and briefly adds as follows. There are only 22, not 24, investigations for which the VA searched for records in response to Request 2. This is because two of the named institutions in Request 2 folded into the investigations of two other named institutions—Cadwell University and Ed4Mil, LLC are part of the same investigation and New Horizons Learning Solutions and Pinellas Corporations are part of the same investigation. Since the last joint status report was filed, the VA has gathered records responsive to one other investigation—Golden Razor Academy of Cosmetology—which Plaintiff had contested was no longer an open investigation. The VA has confirmed that this investigation is, indeed, now closed and is processing records gathered in response to that part of Plaintiff's Request 2 according to the schedule proposed below.

Thus, the VA has gathered records responsive to 17 of the 22 investigations identified in Request 2. Four of the 22 named investigations remain open. The one other investigation that Plaintiff has claimed is no longer open—Alliance School of Trucking—is still indeed still open as related judicial proceedings remain pending. Finally, one investigation listed in Request 2— Scooba Shack—does not exist and the VA has relayed to Plaintiff, now, several times that the name of that institution returns no records.

***Response to the Court.*** Pursuant to the Court's August 12, 2025, Minute Order, the VA provides the following information apprising the Court as to the number of records remaining to

be processed for this request and a proposed timeline for the completion of consultations. *See* August 12, 2025 Min. Order.

**Records remaining to be processed.** Currently, the VA has 548 pages of records remaining to process in response to Plaintiff's Request 2. This includes additional records the VA gathered in response to the investigation that is now closed. The VA also referred approximately 1,324 pages gathered in response to this request to other government agencies. Recently, the VA started receiving many of these records back from consultations. There are now, approximately 588 pages of records that remain outstanding with other government agencies.

**Proposed timeline for processing records.** The VA estimates that it can make a further interim release by the end of the month (September 30, 2025) that will comprise all non-exempt reasonably segregable information, that does not require further consultation, contained in the 548 records remaining to be processed by the VA in response to Request 2. The VA will endeavor to process and release, by the end of the month, any records that it currently has received back from consultations by the same deadline—September 30, 2025. The VA does not have a date certain for when it can complete processing and releasing all records currently awaiting the completion of consultations, but notes that one agency stated it aims to return records at the end of October. After that, the VA will still need to review and finalize the records for release to Plaintiff.

The VA, therefore, respectfully requests that the Court allow the VA to file a further unilateral status report in approximately 60 days or by November 5, 2025, apprising the Court as to the status of the outstanding consultations and an update on their completion for Request 2.

**C.      Request No. 3.**

On June 17, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Reports of Investigation from the Office of Inspector General's Criminal Division concerning [20 named] individuals suspected of fraudulently applying for and receiving disability benefits from the VA." The FOIA request included a request for attachments and any audio or video recordings made during interviews and surveillance operations.

The *Post*'s Position

The VA has disclosed documentary material concerning 18 of the 20 investigations implicated by this request. The VA contends that the remaining two case files pertain to open investigations. The VA noted in January 2025 that it was reviewing video recordings for potential release, but it has not disclosed any recordings or photos in response to this request or asserted that the material is exempt from disclosure. The VA has now provided a date certain for completing review of certain non-exempt records concerning the closed investigations implicated in this request, but has not provided a date certain for the completion of records out for consultation despite the Court's clear and specific Order. The *Post* requests that the Court direct the VA to provide a date certain in a status report by September 26, 2025.

**Allegedly open investigations.** On June 16, 2025, the *Post* provided the VA information demonstrating that the two allegedly open cases are, in fact, closed. The VA continues to dispute that one of those two cases is closed, but has not provided any records supporting this contention, and the publicly available case files on PACER show otherwise. As to Kevin Paul McMains, the VA claims there is a pending deadline to file an appeal. Dkt. 34-1 at 3 n.5. Yet the district court entered judgment on January 7, 2025, and the docket reflects that no notice of appeal was filed. *See* Judgment, Dkt. 69, *United States v. McMains*, No. 3:23-cr-00024-MCR (N.D. Fla. Jan. 7, 2025); Fed. R. App. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be

filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal.").

As to Darold Maxfield, Jr., the VA has, after many months, now conceded that the case is now closed. The *Post* looks forward to receiving these records promptly.

**Disputes arising from disclosed material.** The parties have agreed to defer disputes over the *Post*'s objections to material redacted or otherwise withheld from the disclosures made to date until the VA completes its production of material responsive to the non-database requests.

The *Post* asks the Court to order the VA to disclose all nonexempt public records responsive to this request by September 26, 2025. The Court should also order the parties to submit another status report on September 26, 2025.

<u>VA's Position</u>

***Response to Plaintiff's Position and Update.*** The VA respectfully refers the Court to its position statements in prior joint status reports responding to Plaintiff's complaints about this Request and briefly adds as follows. The VA agrees that it has disclosed pages of records concerning 18 of the 20 investigations implicated by this request. Since the last joint status report, the VA also gathered additional records responsive to one other investigation—Darold Maxfield, Jr. The VA confirmed that this investigation is closed. The VA is now processing the records gathered in response to this other investigation according to the below schedule.

***Response to the Court.*** Pursuant to the Court's August 12, 2025, Minute Order, the VA provides the following information apprising the Court as to the number of records remaining to

10

be processed for this request and a proposed timeline for the completion of consultations. *See* August 12, 2025 Min. Order.

**Records remaining to be processed.** In total, the VA has approximately 228 pages of records it still needs to process in response to Request 3. The VA has also referred over 1,300 pages for consultations and has recently received approximately 818 pages returned to it from consultations. The VA is awaiting the return of 482 remaining pages that were referred for consultation. There also remain approximately 277 audio/videos that the VA has gathered in response to this request that were gathered in response to five of the twenty individuals named in Request 3.

**Proposed timeline for processing records.** The VA has a third interim release that it is preparing to make in response to Request 3, which it expects to make on September 9, 2025, and comprises 673 pages. Once that request goes out the only remaining pages of records to process for this request are those gathered in response to an investigation implicated by Mr. Maxfield, Jr.'s name (the 288 pages of records) and any remaining pages that were returned from or out for consultations. The VA estimates that it can process the 228 pages recently gathered in response to a search for records implicated by Mr. Maxfield, Jr.'s name and release records subject to any exemptions, by the end of this month—September 30, 2025. The VA also estimates that it can process and release the 818 pages of material returned to it from consultations by the same date, September 30, 2025. The VA does not have an estimated date for completing the remaining 482 pages on consultations but is actively following up with the point of contact at each agency—at

least 13—for an estimated date of completion. As the VA receives consultations back, it will then need to review and finalize the records for release to Plaintiff.

As for video/audio, the VA is confirming that no other video/audio remain to be collected. Without reviewing each video to determine how long it is and the content, the VA cannot estimate how long it will take to complete processing these videos. In the meantime, the VA proposes that the parties confer to determine which videos Plaintiff would like to prioritize first.

The VA, therefore, respectfully requests that the Court allow the VA to file a further unilateral status report in approximately 60 days or by November 5, 2025 apprising the Court as to the status of the outstanding consultations and processing of video/audio and an update on their completion for Request 3.

**Request No. 4.**

On June 24, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Veterans Benefits Administration's database of complaints submitted via the VA GI Bill Feedback Tool, as well as via other sources, regarding schools and employers."

The *Post*'s Position

During the June 12 Conference and in the June 20 Joint Status Report, the VA asserted that the data responsive to this request includes complainant-provided narrative descriptions of allegations against GI Bill institutions, which the VA will not disclose. The *Post* disputed that nondisclosure of that information is lawful, and asked the VA for an example of the material at issue. The VA declined to provide one. Additionally, the VA declined to commit to providing its position on which of the 55 fields in the database it believes are exempt from disclosure—other than the two narrative description fields, and an unspecified number of fields containing

12

identifying information. The *Post* requested that the VA do so, and confirmed that it was not requesting disclosure of Social Security Numbers.

The VA's invocation of Exemption 3 and 38 U.S.C. § 5701 to withhold material responsive to this request (and others) is misplaced. FOIA Exemption 3 applies only when the cited statutory basis for nondisclosure provides the agency "no discretion on the issue" of whether it may disclose information or when the statute "establishes a particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). It cannot shield the requested material here because 38 U.S.C. § 5701 expressly allows the Secretary of the VA—"as a matter of discretion"—to allow for inspection of or to disclose "Department records" and "information." *See* 38 U.S.C. § 5701(d)-(e); *see also* 38 C.F.R. §§ 1.501 (providing by regulation that VA may, in the discretion of Secretary or Deputy Secretary, release information).

Pursuant to the Court's August 12 Minute Order declining to set a summary judgment briefing schedule until production has ended, the *Post* respectfully submits that Request No. 4 is ripe for summary judgment when the Court does enter a briefing schedule.

    VA's Position

The VA agrees that the parties' dispute over the VA's application of Exemption 3 in response to Request 3 is ripe for summary judgment, and at the appropriate time after the VA has completed its response to the other remaining FOIA requests at issue in this case. The VA maintains that joint status reports are not appropriate forums to litigate disputes about the merits of whether an agency has met its obligations under FOIA, especially when both sides agree that the disputes are ripe for summary judgment.

**D.        Request No. 5.**

On June 13, 2024, the *Post* submitted a FOIA request to the VA seeking the disclosure of data from the VBA's GI Bill Comparison Tool.

On July 14, 2025, the VA disclosed the data it possesses that is responsive to this request. The VA withheld the names, phone numbers, and email addresses of school certifying officials under FOIA Exemption 6. *See* 5 U.S.C. § 552(b)(6). On July 18, 2025, the *Post* requested a data dictionary for the records released by the VA in response to this request, as the version available from the VA's website does not contain all of the fields. On July 24, 2025, the VA responded that a data dictionary would not be responsive to Request No. 5 and that, in any event, it does not have a data dictionary corresponding to the additional fields. Accordingly, the VA has finished releasing records in response to this request.

The parties will confer to determine whether the *Post* has any remaining issues with regard to the VA's response to this request in an attempt to resolve those disputes outside of further litigation, or to identify them for purposes of summary judgment motions.

**E.        Request No. 6.**

On September 23, 2024, the *Post* submitted a FOIA request to the VA seeking copies of correspondence sent since January 1, 2019, "from the VA's Office of General Counsel . . . notifying individuals, companies or other entities that they may be engaged in illegal activities."

The VA previously represented that it has reviewed all records responsive to this request. Of the 1,224 pages it has identified as responsive, the VA has fully withheld 214 pages of material and redacted 422 pages. The parties disagree about the propriety and applicability of the FOIA exemptions that VA has cited in support of its non-disclosures. During the May 28

Conference, the parties agreed to table the dispute over this request while they try to advance other matters at issue in this case.

**F.          Request No. 7.**

On September 23, 2024, the *Post* submitted a FOIA request to the VA seeking "Reports of Investigation (video and photographic portions only) from the Office of the Inspector General concerning [ten named people] who were criminally investigated on suspicion of fraudulently receiving disability benefits from the VA."

The *Post*'s Position

On August 8, 2025, the VA released 17 videos responsive to this request. Previously, the VA had released three videos on July 28, 2025 and 99 videos on June 27, 2025, as well as 273 pages of photographs. It possesses approximately 17 hours of responsive footage. The VA has delayed the potential release of an additional 45 videos pending consultation with the Veterans Health Administration ("VHA"). The VA states that it is still reviewing 24 videos for release, and the *Post* requests that the Court direct the VA to provide a date certain for their prompt release.

**Inconsistent redactions.** On August 8, the VA released 16 additional videos from the Barry Wayne Hoover case, some with Hoover's face blurred and some without.[1] For example, the VA released a six-and- a-half-minute long surveillance video of Hoover in the VA waiting room with his face unblurred. But the VA blurred Hoover's face in parts of other clips. As the *Post* illustrated in its August 12 response letter to the VA, the following side-by-side screen grabs of Hoover from within the same video amply illustrate this inconsistency:

---

[1] Likewise, the VA inconsistently redacted footage related to the *Kilpatrick* case, responsive to Request Nos. 7 and 10, blurring his face in the most recent video but not in the same footage released previously. *See infra* at Request No. 10, *Post*'s Position.




**Image 3. "010947_Hoover 15.mp4" at 0:05**              **Image 4.** *Id.* **at 1:54**

The *Post* requests that the VA promptly release versions of the remaining Hoover videos without blurring his face.

      **Cases without recordings.** On June 27, 2025, the VA stated that for three of the cases, it had no video or audio recordings. Yet publicly available court filings in each of those cases reflect that videos were played in open court. Further, in November 2024, the U.S. Attorney's Office for the Western District of Michigan, which prosecuted one of the cases, provided the *Post* with six of the videos admitted as exhibits at trial. The *Post* provided the VA with this information in a letter on June 27, 2025, explaining that the VA's response conflicted with the publicly available dockets. This suggests that the VA has not met its duty to adequately search for responsive records. *See, e.g.*, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.") (citation omitted). The *Post*'s June 27 letter requested a prompt explanation as to why the VA claims it has no responsive records, including what the VA did to search for responsive records, and whether the VA's position is that the responsive records have been transferred to the National

16

Archives and Records Administration ("NARA") due to their age. The *Post* has not received any such explanation, including in the recent Joint Status Reports.

    **Consultations.** On August 8, 2025, the VA repeated its prior statement that it was consulting with the VHA on 45 additional videos, which depict Compensation and Pension ("C&P") exams, in five of the cases. The *Post* has repeatedly explained to the VA, including in its August 12 letter, that the VA cannot avoid its obligation to disclose public records in this way. The *Post*'s August 12 letter also again requested that the VA promptly provide a date certain for the completion of the VHA's consultations and for the release of these videos. The Court's Minute Order entered the same day likewise directed the VA to "provide a proposed timeline for the completion of consultations related to request nos. 2, 7 and 10" in this joint status report. The *Post* requests that the VA be directed to provide a date certain, consistent with the Court's clear and specific Order.

    **Remaining records.** The VA represented in the June 20 Joint Status Report that by July 17, 2025 it would complete its review of the remaining secondary priority videos and by that date either disclose the footage or notify the *Post* of the basis for any nondisclosure. The *Post* requests that the VA promptly provide a proposed date certain for completion of the review of the remaining 24 videos identified below, and that the date be in September. The Court should also order the parties to submit another status report on September 26, 2025.

    VA's Position

    ***Response to Plaintiff's Position and Update.*** The VA respectfully refers the Court to its position statements in prior joint status reports responding to Plaintiff's complaints and briefly adds as follows. Plaintiff admits that Plaintiff has received two versions of the same videos, one version that blurs and one version that does not blur Hoover's face. Thus, there is no reason to

re-release videos to Plaintiff when Plaintiff has already received a version of that same video without the blurred redactions. As for the videos that blur Hoover's face for which no other unblurred version has been released, the VA is assessing whether to lift those redactions and is willing to confer with Plaintiff on this issue further. The VA maintains, however, that joint status reports are not appropriate forums to litigate disputes about matters that do not pertain to the ultimate merits of this FOIA case, or improperly ask the court to wade in on the ultimate merits of this case, which should be reserved for ruling on summary judgment.

*Response to the Court.* Pursuant to the Court's August 12, 2025, Minute Order, the VA provides the following information apprising the Court as to the number of records remaining to be processed for this request and a proposed timeline for the completion of consultations. *See* August 12, 2025 Min. Order.

**Records remaining to be processed.**  The only remaining records to process in this request are approximately 24 videos that remain on consultation.

**Proposed timeline for processing records.** The VA continues to follow-up on the records that remain on consultation and will endeavor to complete those consultations by the end of October 2025.

G.        **Request Nos. 8-9.**

On May 30, 2024, the *Post* submitted a FOIA request to VA seeking an electronic copy, or an extract of data in a standard, machine-readable data format, of VBA's "master Corporate database" and "for all tables and all fields within each table in the database." Also on May 30, 2024, the *Post* submitted a FOIA request to VA seeking an electronic copy, or an extract of data in a standard, machine-readable data format, of the VBA's "VETSNET mini master file" and "for all tables and all fields within each table in the database."

The *Post*'s Position

On May 22, 2025, in an effort to narrow this dispute, the *Post* made substantial concessions relating to these two requests and proposed that both of them could be satisfied by production of a limited amount of VETSNET data. Specifically, the *Post* proposed that disclosure of certain identified fields from five VETSNET tables would resolve these requests. The *Post*'s proposal also reiterated its prior offer to narrow the dataset further by agreeing to exclude data concerning claims or payments made before 2001, and the *Post* has said it is willing to allow the VA to withhold from disclosure data reflecting claimants' names, addresses, Social Security Numbers, and dates of birth.

During the June 12 Conference, the VA for the <u>first</u> time stated that the dataset-describing document it gave the *Post* in November 2024 to guide efforts to narrow the requests may not actually describe the VETSNET data as it is currently maintained by the VA. The VA asserted that it needed to further review the material and would update the *Post*, at an unspecified time, about whether the data-identifying material it previously provided the *Post* is accurate and about the VA's response to the *Post*'s proposal to satisfy these requests.

In the June 20 Joint Status Report, the VA stated that it had found that "the specific information that Plaintiff selected from the outdated manual for response to these Requests might not easily translate to an existing database," but that "VA has had multiple meetings amongst different components to determine whether it can learn enough information about existing records" to "formulate[] a viable response to Plaintiff's proposed offer." Dkt. 34 at 17-18. Now, however, the VA appears to have shut down this process, instead stating that only summary judgment can resolve this request. The *Post* requests an update as to whether the VA is

continuing to consider this request. To the extent the VA is no longer considering this request, the *Post* submits that it is ripe for summary judgment.

The *Post* asks the Court to order the parties to submit another status report on September 26, 2025.

<u>VA's Position</u>

The VA has maintained from the outset that Plaintiff's Requests Nos. 8 and 9 fail to reasonably describe the records sought. Attempts to clarify this request, moreover, proved unsuccessful as the VA has informed Plaintiff that the records Plaintiff purports to request, now, during litigation and not on the face of the FOIA request, do not exist as Plaintiff desires them. At best, the VA would have to create a record to provide Plaintiff with the information that Plaintiff appears to want in response to this request, which FOIA does not obligate the government to do. Thus, because Plaintiff appears to want to pursue these requests, nonetheless, on summary judgment, the parties will have to address it with the Court then. The VA, therefore, agrees that these requests are ripe for summary judgment, at the appropriate time after the VA has completed its response to the other remaining FOIA requests at issue in this case.

**H.        Request No. 10.**

On October 10, 2024, the *Post* submitted a FOIA request to EOUSA seeking a "video compilation exhibit . . . introduced in open session and admitted into evidence by the U.S. Attorney's Office for the Northern District of Georgia" during a July 25, 2019, proceeding in *United States v. Kinsley Kilpatrick*, No. 1:18-cr-201 (N.D. Ga.).

<u>The *Post*'s Position</u>

On August 8, 2025, the VA released a redacted version of the 15-minute *Kilpatrick* video. The video footage responsive to this narrow request was played in open court without

redactions, and the EOUSA on March 10, 2025 stated that it anticipated disclosing the video "within 60 days." *See* Dkt. 25 at 7.

The *Post* has consistently pressed for the complete release of this video. Prior to the release of the redacted 15-minute version on August 8, the *Post* had only received a few minutes of the footage. On June 27, Defendants produced, for the first time, just one minute of the video. After the *Post* inquired about the full 15-minute video, Defendants told the *Post* on July 9 that they had only "potentially" located it for review. On July 28, the VA said it had sent the full 15-minute video to VHA for consultation, but released around four minutes of it. By August 8, when the VA finally released the entire 15 minutes of video, it was redacted. There is no lawful justification for redacting this video played in open court. The VA should disclose the full requested footage immediately. In particular, the *Post* strongly objects to the following redactions, as it conveyed to Defendants in its August 12 response.

**Redactions of the Kilpatricks' Faces.** The VA's August 8 letter stated that it redacted the faces of individuals shown in the video pursuant to FOIA Exemptions 6 and 7C. The VA previously agreed not to blur the subjects of its investigations – instead blurring only third parties such as passersby and friends. Now, however, the VA has blurred the faces of defendant Kinsley Kilpatrick and his wife/co-defendant Tracie Jeanne Kilpatrick in this video. Like Kinsley Kilpatrick, Tracie Jeanne Kilpatrick is a subject of this investigation. They were co-defendants, both pleaded guilty to conspiracy to defraud the VA and Social Security Administration, and were sentenced on the same day, before the same judge. While the *Post* continues to object to the VA's third-party redactions, the VA's decision to now blur the Kilpatricks' faces is at odds with both the law and its own prior releases. The VA has not acknowledged or explained this discrepancy.

Underscoring the VA's inconsistencies, on June 27, 2025, it released versions of three clips that are part of this 15-minute video compilation *without* blurring Kinsley Kilpatrick's face. Yet six weeks later, his face was inexplicably blurred in those same clips, while people in the background are now visible. Here is a screen grab of his face from the video that the VA released on June 27, as compared with the August 8 release:

    

**Image 1. June 27 Video at 0:18**        **Image 2. Aug. 8 Video at 12:18**

Again, there is no basis for making *any* redactions to this video that has been played in open court, but blurring the Kilpatricks' faces is especially unwarranted and unlawful.

**Redactions of VA Auditor's Face.** The VA also blurred the face of the VA examiner in this video. Yet public court records from the *Kilpatrick* case show that the VA examiner signed a consent form agreeing to be recorded by VA-OIG, eliminating any purported privacy concerns. This redaction, too, is especially unwarranted.

**Missing Audio.** There is no audio for all but the last 1:20 of the 15-minute video. If the VA has intentionally removed the audio, it has not provided any basis for doing so, nor is there any justification given that, again, this video was played in open court. If the VA has removed the audio by mistake, the *Post* requests that the VA promptly provide a complete copy of the

video with audio. The VA has released audio for other videos responsive to this request, so the lack of audio in this instance appears to be unwarranted.

The *Post* asks the Court to order the VA to disclose the remaining video footage responsive to this request, as well as another status report, by September 26, 2025.

<u>VA's Position</u>

***Response to Plaintiff's Position and Update.*** The VA respectfully refers the Court to its position statements in prior joint status reports responding to Plaintiff's complaints and briefly adds as follows. Plaintiff admits that Plaintiff has received two versions of the same videos, one version that blurs and one version that does not blur Hoover's face. Thus, there is no reason to re-release videos to Plaintiff when Plaintiff has already received a version of that same video without the blurred redactions. As for the videos that blur Hoover's face for which no other unblurred version has been released, the VA is assessing whether to lift those redactions and restore audio to those files or maintain those withholdings on grounds that the videos/audio is taken from a medical proceeding. Therefore, there are additional interests at issue for which FOIA exemptions apply. The VA is willing to confer with Plaintiff on this issue further. The VA maintains, however, that joint status reports are not appropriate forums to litigate disputes about matters that do not pertain to the ultimate merits of this FOIA case, or improperly ask the court to wade in on the ultimate merits of this case, which should be reserved for ruling on summary judgment.

***Response to the Court.*** Pursuant to the Court's August 12, 2025, Minute Order, the VA provides the following information apprising the Court as to the number of records remaining to be processed for this request and a proposed timeline for the completion of consultations. *See* August 12, 2025 Min. Order.

**Records remaining to be processed.**  None believed at this time for VA.

**Proposed timeline for processing records.** None believed at this time for VA.

II.    **Request for Production Order and Further Joint Status Reports**

The *Post*'s Position

Entry of production orders and orders requiring frequent status reports is appropriate and commits the parties to advancing this case and clarifying the issues in dispute. The *Post* therefore requests that the Court order the parties to submit another status report on September 26, 2025 and:

- Order the VA to disclose, by September 26, 2025, all public records responsive to **Requests Nos. 2 and 3** and to identify the grounds for all nondisclosure of material claimed to be exempt;

- Order that by September 26, 2025, the VA shall disclose all nonexempt public records responsive to **Request Nos. 4, 7, and 10**; identify the grounds for all nondisclosure of material claimed to be exempt, as well as information on the VA's search and the status of its referrals or consultations; and release a copy of the 15-minute video responsive to **Request No. 10** with audio and without the Kilpatricks' or VA examiner's faces blurred; and

- Pursuant to the Court's August 12 Minute Order, enter a summary judgment briefing schedule in connection with **Request Nos. 1, 4, 6, 8, and 9** as soon as production ends.

VA/EOUSA Position

Plaintiff's requests from the Court are unsupported and should be denied. Plaintiff cites no authority for its request that the Court compel the VA to complete processing records

24

responsive to Plaintiff's requests by September 26, 2025. Rather, the VA continues to respond diligently to Plaintiff's request. In response to Request 2, alone, the VA has released over 6,000 pages of records to Plaintiff. In response to Request 3, the VA has released over 2,700 pages to Plaintiff, with a third interim release expected next week.

Meanwhile, Plaintiff's use of joint status reports are inefficient, improper, and a waste of time. Plaintiff employs this Joint Status Report (and other previous Reports) to complain about the VA's processing of its ten FOIA requests and impermissibly seeks judicial intervention or rulings on myriad issues that either do not pertain to the ultimate merits of this FOIA case, or improperly ask the court to wade in on the ultimate merits of this case, which should be reserved for ruling on summary judgment. Joint Status Reports are not appropriate forum to litigate in piecemeal complaints of an on-going matter. Rather, the VA submits that Joint Status Reports function to apprise the Court on the progress of this case. The VA has made substantial progress responding to Plaintiff's ten FOIA requests and continues to do so.

The VA asks that the Court enter an order permitting the VA to file a further status report, unilaterally, or by way of a joint status report, if necessary, by November 5, 2025, to address the VA's processing of the remaining records responsive to Requests 2, 3, 7, and 10 solely. The parties are otherwise at an impasse with and will need to brief Requests 1, 4, 8, and 9. The Plaintiff should also identify to Defendant, through counsel, whether any issues remain to be addressed in response to Requests 5 and 6 in an effort to narrow those disputes outside of litigation. By limiting the submission of or scope of future status reports, the VA can also better spend its limited resources and time responding to these requests rather than expending more

time and resources responding to Plaintiff's frequent fault-finding complaints and serial (and frequent) Joint Status Reports.

Dated: September 5, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

/s/ Sasha Dudding
Charles D. Tobin (#455593)
**BALLARD SPAHR LLP**
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone:  (202) 661-2200
Facsimile:  (202) 661-2299
tobinc@ballardspahr.com
catem@ballardspahr.com

Sasha Dudding (#1735532)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019
Telephone:  (212) 223-0200
Facsimile:  (212) 223-1942
duddings@ballardspahr.com

*Counsel for Plaintiff WP Company LLC*
*d/b/a The Washington Post*

By: /s/ Anna D. Walker
ANNA D. WALKER
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-252-2544

*Attorneys for the United States*