IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WP COMPANY LLC<br>d/b/a THE WASHINGTON POST,<br><br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF VETERANS AFFAIRS, *et al.*,<br><br>    Defendants. | Case No. 24-cv-2661 (AHA) |

**Joint Status Report**

Pursuant to the Court's June 23, 2026 Minute Order, Plaintiff WP Company LLC d/b/a The Washington Post (the "*Post*") and Defendants Department of Veterans Affairs ("VA") and Executive Office for United States Attorneys ("EOUSA") respectfully submit this joint status report.

**I. Joint Status of Plaintiff's FOIA Requests**

**A.    Request No. 1.**

On May 30, 2024, the *Post* submitted a FOIA request to the VA seeking "The Board of Veterans' Appeals Decisions database. The request is for all tables and all fields within each table in the database. This request is for an electronic copy or extract of data in a standard, machine-readable data format."

As the parties represented in the prior joint status report, the VA maintains that it has fully responded to Plaintiff's Request 1 and the parties agree that any dispute over the sufficiency of that response is ripe for summary judgment at the appropriate time after the VA has completed its response to the other remaining FOIA requests at issue in this case.

**B.      Request No. 2.**

On June 6, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Reports of Investigation from the Office of Inspector General's Criminal Division concerning the following educational institutions, their employees and/or students" at 24 institutions the *Post* named in the request.

The VA maintains that it has fully responded to Plaintiff's Request 2, except for the four of the 22 investigations which remain open, and the parties agree that any dispute over the sufficiency of that response is ripe for summary judgment at the appropriate time after the VA has completed its response to Requests 3 and 7. *See* June 20, 2025 JSR (ECF No. 34) at 5; Aug. 5, 2025 JSR (ECF No. 39) at 6-7; Dec. 10, 2025 JSR (ECF No. 42) at 3-4.

**C.      Request No. 4.**

On June 24, 2024, the Post submitted a FOIA request to the VA seeking copies of the "Veterans Benefits Administration's database of complaints submitted via the VA GI Bill Feedback Tool, as well as via other sources, regarding schools and employers."

As the parties represented in the prior joint status report, the parties agree that the parties' dispute over the VA's response to this request is ripe for summary judgment at the appropriate time after the VA has completed its response to the other remaining FOIA requests at issue in this case.

**D.      Request No. 5.**

On June 13, 2024, the Post submitted a FOIA request to the VA seeking the disclosure of data from the VBA's GI Bill Comparison Tool.

On July 14, 2025, the VA disclosed the data it possesses that is responsive to this request. The VA withheld the names, phone numbers, and email addresses of school certifying officials

under FOIA Exemption 6. See 5 U.S.C. § 552(b)(6). On July 18, 2025, the Post requested a data dictionary for the records released by the VA in response to this request, as the version available from the VA's website does not contain all of the fields. On July 24, 2025, the VA responded that a data dictionary would not be responsive to Request No. 5 and that, in any event, it does not have a data dictionary corresponding to the additional fields. The Post accepts this no records response. Accordingly, the VA has finished releasing records in response to this request and the sole remaining issue as to this request comprises the propriety of the VA's application of Exemption 6(C) to redact certain information. The parties will continue to meet and confer to try to narrow these disputes over the Exemption 6(C) redactions.

### E.        Request No. 6.

On September 23, 2024, the Post submitted a FOIA request to the VA seeking copies of correspondence sent since January 1, 2019, "from the VA's Office of General Counsel . . . notifying individuals, companies or other entities that they may be engaged in illegal activities."

The VA previously represented that it has reviewed all records responsive to this request. Of the 1,224 pages it has identified as responsive, the VA has fully withheld 214 pages of material and redacted 422 pages. The parties disagree about the propriety and applicability of the FOIA exemptions that VA has cited in support of its non-disclosures. During the May 28, 2025 Conference, the parties agreed to table the dispute over this request while they try to advance other matters at issue in this case.

### F.        Request Nos. 8-9.

On May 30, 2024, the Post submitted a FOIA request to VA seeking an electronic copy, or an extract of data in a standard, machine-readable data format, of VBA's "master Corporate database" and "for all tables and all fields within each table in the database." Also on May 30,

2024, the Post submitted a FOIA request to VA seeking an electronic copy, or an extract of data in a standard, machine-readable data format, of the VBA's "VETSNET mini master file" and "for all tables and all fields within each table in the database."

As the parties represented in the prior joint status report, the parties agree that the parties' dispute over the VA's response to this request is ripe for summary judgment at the appropriate time after the VA has completed its response to the other remaining FOIA requests at issue in this case.

## II.    Status of Requests Where the Parties' Position Is Not Joint

In light of the VA's confirmation in this joint status report that the Defendants' release of records in response to each of the below requests is complete, the parties' disputes over Defendants' responses to these requests are ripe for summary judgment.

### A.        Request No. 3.

On June 17, 2024, the *Post* submitted a FOIA request to the VA seeking copies of the "Reports of Investigation from the Office of Inspector General's Criminal Division concerning [20 named] individuals suspected of fraudulently applying for and receiving disability benefits from the VA." The FOIA request included a request for attachments and any audio or video recordings made during interviews and surveillance operations.

**The *Post*'s Position**

In its May 12 Order, the Court directed that "Defendants shall provide a date by which they expect all processing will be completed." The VA has disclosed documentary material concerning each of the 20 investigations implicated by this request, and following the VA's most recent release, its response to this request has concluded.

**Closed investigations and consultations and referrals to other agencies.** On May 21,

4

2026, the VA released 90 videos from three cases: Zachary Barton (one video), Steven M. Woodall (18 videos, three photos), and John Paul Cook (71 videos). The VA stated that it was fully withholding an additional 38 videos from Barton's case and seven from Woodall's case following consultation with the Veterans Health Administration ("VHA") because the records pertained to Compensation and Pension ("C&P") exams. In the prior joint status report, the VA had said that its review and release of these videos would be complete after the nine *McMains* videos described below. *See* ECF 48 at 6.  In light of the VA's confirmation in this joint status report that the release of records in response to Request No. 3 is in fact complete, the parties' dispute over the VA's response to this request is ripe for summary judgment.

**Nine *McMains* videos.** On April 10, 2026, the VA released nine videos from the *McMains* case. In the May 8, 2026 joint status report, the VA stated that "the VA has determined that the nine remaining [videos] are incompatible for review." These are presumably a different set of nine videos than the nine *McMains* videos the VA released on April 10, 2026. The *Post* and VA met and conferred by videoconference on May 13, and the VA stated that it was still looking into the nine incompatible *McMains* videos but did not have more detail on the issue at that time. The VA's letter accompanying its May 21 release likewise stated, "we are still working on the nine (9) additional videos for McMain[s]." The *Post* received these nine *McMains* videos on June 23, 2026.

*McMains* **consultation records.** The VA released 443 pages of documents from *McMains* on March 25, 2026. Until May 11, 2026, the VA was still reviewing approximately 80 pages of records that were returned to it after consultation with other agencies (the VHA and the Veterans Benefits Administration ("VBA")). In the April 8, 2026 joint status report, the VA said that it would release these records by May 1, 2026. *See* Dkt. 46 at 6. Then, in the May 8, 2026

joint status report, the VA stated that it expected to release these records by May 15, 2026. *See*

Dkt. 47 at 6. The VA released the records on May 11, 2026. The VA now confirms that it has

completed its review and release of all records returned from consultations.

**Disputes arising from disclosed material.** The parties have agreed to defer disputes

over the *Post*'s objections to material redacted or otherwise withheld from the disclosures made

to date until the VA completes its production of material responsive to the non-database requests.

### VA's Position

On June 23, 2026, VA released the remaining nine "*McMains*" videos, in accordance with

its anticipated deadline included in the previous joint status report. *See* ECF No. 48. This concludes

VA's review and release of all records returned from consultations regarding Request No. 3.

### B.    Request No. 7.

On September 23, 2024, the *Post* submitted a FOIA request to the VA seeking "Reports of

Investigation (video and photographic portions only) from the Office of the Inspector General

concerning [ten named people] who were criminally investigated on suspicion of fraudulently

receiving disability benefits from the VA."

### The *Post*'s Position

On April 28, 2026, the VA released four photos from one of the named cases

(Henderson) and 45 pages, including photos, from another case (Paulsen). The photos, however,

were so blurry as to be essentially meaningless. In the prior joint status report, and during the

parties' May 13 meet and confer, the *Post* requested that the VA release clearer versions of the

photos. On May 21, the VA re-released two of the photos, which were still very grainy and

difficult to decipher. The VA represents below that it has no clearer copies of these photos.

**Consultations and Withholdings.** The VA's April 28 and May 21, 2026 release letters

stated that 250 videos were with the VHA for consultation. The VA did not provide any timeframe for their review and release. As the *Post* has explained previously, the VA improperly sought to avoid its obligation to disclose public records by sending them for consultations and referrals. *See, e.g.*, *Keys v. Dep't of Homeland Sec.*, 570 F. Supp. 2d 59, 70 (D.D.C. 2008) ("Because the agency who received the FOIA request . . . is the agency ultimately responsible for responding to the request, the agency is not absolved of its obligations under FOIA when it refers the documents elsewhere."). On July 28, 2026, however, the VA finally released these 250 videos.

**Inconsistent redactions.** On August 8, 2025, the VA released 16 additional videos from the Barry Wayne Hoover case, some with Hoover's face blurred and some without.[1] For example, the VA released a six-and-a-half-minute long surveillance video of Hoover in the VA waiting room with his face unblurred. But the VA blurred Hoover's face in parts of other clips. The *Post* has requested that the VA promptly release versions of the remaining Hoover videos without blurring his face. *See* ECF No. 39 at 15-16. In the December 10, 2025 joint status report, the VA stated that it would review them again. *See* ECF No. 42 at 15-16. On December 22, 2025, the VA released three of the videos. As to the remaining 13 videos, the VA's January 30, 2026 release letter stated that it had undertaken this review and "determined that no further changes to the blurred portions of the videos will be warranted at this time" in order to blur images of third parties. This explanation is confusing, as the *Post*'s request is to release Hoover's image, and the VA has in many releases throughout this case managed to blur third parties while releasing images of the investigations' subjects.

---

[1] Likewise, the VA inconsistently redacted footage related to the *Kilpatrick* case, responsive to Request Nos. 7 and 10, blurring his face in the most recent video but not in the same footage released previously. *See infra* at Request No. 10, *Post*'s Position.

The *Post* continues to object to the VA's inconsistent redactions of Hoover in these videos. In light of the release of some videos with Hoover's face unredacted, and the VA's lack of reasonable explanation for adhering to this inconsistent position on the remaining 13 videos, **the *Post* respectfully requests that the Court order the VA to show cause by August 31, 2026 why the Court should not order the remaining Hoover videos to be released without his face blurred.** Contrary to the VA's below statement, the *Post* is not asking the Court to take any steps toward "sanctioning" the VA, but rather to comply with its FOIA obligations in a timely manner.

**Cases without recordings.** On June 27, 2025, the VA stated that for three of the cases, it had no video or audio recordings. Yet publicly available court filings in each of those cases reflect that videos were played in open court. Further, in November 2024, the U.S. Attorney's Office for the Western District of Michigan, which prosecuted one of the cases, provided the *Post* with six of the videos admitted as exhibits at trial. The *Post* provided the VA with this information in a letter on June 27, 2025, explaining that the VA's response conflicted with the publicly available dockets. This suggests that the VA did not meet its duty to adequately search for responsive records. *See, e.g.*, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) ("An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents.") (citation omitted).

Finally, on December 22, 2025, the VA stated that it had requested another search and had located videos from one of the three cases, Gray. On February 10, 2026, the VA stated that it had now located videos and photos from the Paulsen and Henderson cases, which had been transferred to NARA. The VA's long-delayed location and processing of videos from these three

cases underscores the inadequacy of the VA's search.

In the April 8, 2026 joint status report, the VA represented that it had requested an additional search for responsive videos and expected to update the *Post* on the results of that search and begin releasing videos by May 1, 2026. *See* Dkt. 46 at 12; *see also* Dkt. 44 at 15 (providing same timeline in February 13, 2026 joint status report). As with the May 1 release expected for Request No. 3, this did not happen on time. The VA did, however, explain on July 27, 2026 that "after reviewing Paulsen's file received from NARA, no audio or video recordings were present. An additional search was conducted, and OIG was unable to locate any videos relating to Paulsen's investigative case."

Accordingly, and as the VA represents below, the VA's review and release of records in response to this request is now complete. The parties' dispute over the VA's response to this request is ripe for summary judgment. **The Court should set a briefing schedule for summary judgment, and order the parties to submit another status report on August 31, 2026.**

### VA's Position

The VA has completed processing all records gathered in response to all ten investigations implicated in the request.

The VA made three interim releases on January 30, 2026, April 28, 2026, and May 21, 2026. The 8th interim release included 12 videos associated with Gray concluding all processing for the Gray case. The 9th and 10th interim releases involved records associated with the Henderson and Paulsen cases.

Regarding the blurry photos identified by Plaintiffs, the VA re-produced the photos in a clearer format. These records were produced as they exist, the VA has no obligation to create records that do not exist, including an enhanced photo or image not in the VA's system. *See*

*Crummey v. SSA*, 794 F. Supp. 2d 46, 62 (D.D.C. 2011) (accepting that agency provided plaintiff with "best available records" even though plaintiff asserted that copies were illegible). There is no need for the Court to "order the VA to determine whether it has any clearer copies, including as part of its ongoing searches, and re-release the remaining photos by August 31, 2026" because the VA has released what it has and it does not possess "clearer copies," and as described above, is under no obligation to create such copies.

In accordance with the date provided in the last JSR, the VA released the remaining 250 videos on July 27, 2026. *See* ECF No. 48. The VA declines to respond to Plaintiff's irrelevant, continued arguments where it has produced the videos it requested.

The Post also requests "that the Court order the VA to show cause by August 31, 2026 why the Court should not order the remaining Hoover videos to be released without his face blurred." By way of context, of the 163 videos contained in an investigation implicated by the name Barry Wayne Hoover that the VA reviewed and processed in response to Request 7, ninety-seven videos were released, three videos were blank, six videos were not compatible for review, and thirty-nine videos were duplicates. Eighteen of these videos have been withheld under FOIA Exemption (b)(3) citing VA Claims Confidentiality Statute, 38 U.S.C. § 5701 along with FOIA exemptions (b)(6) and (b)(7)(c). In addition, of the ninety-seven videos released, Plaintiff has taken issue with the redactions applied to sixteen videos. The VA agreed to re-review these videos and re-released three of them.

To the extent Plaintiff challenges the redactions applied to the remaining thirteen videos, there has been no ruling on the merits of these redactions to support a request that the VA show cause why it should lift these redactions. Plaintiff forgets its order of operations. Asking the Court to enter a show cause order, now, assumes the merits of a dispute that has not yet been litigated

and the appropriate time to litigate those matters has simply not come to pass. If Plaintiff is so eager to dispute this issue, Plaintiff can file a motion for summary judgment. But even then, such filing would be premature and disfavored given the fact that it asks the Court to address disputes over Plaintiff's FOIA request in a piecemeal fashion and without the benefit of a full record. After all, the basis for withholding information in these thirteen Hoover videos applies equally to other videos that have been produced in this case and may still be produced in this case, some of which Plaintiff may not even challenge. It is premature and inefficient to ask the Court to rule on piecemeal withholdings at the risk of eventually contradicting those rulings once the Court has the benefit of reviewing an entire record for this case.

The Court should soundly reject the Plaintiff's request for a show cause order.

The VA has agreed to re-review the Kilpatrick videos and if it determines necessary, re-release the Kilpatrick videos before the date of the next joint status report.

### C.        Request No. 10.

On October 10, 2024, the *Post* submitted a FOIA request to EOUSA seeking a "video compilation exhibit . . . introduced in open session and admitted into evidence by the U.S. Attorney's Office for the Northern District of Georgia" during a July 25, 2019, proceeding in *United States v. Kinsley Kilpatrick*, No. 1:18-cr-201 (N.D. Ga.).

**The *Post*'s Position**

On August 8, 2025, the VA released a redacted version of the 15-minute *Kilpatrick* video. The video footage responsive to this narrow request was played in open court without redactions, and the EOUSA on March 10, 2025 stated that it anticipated disclosing the video "within 60 days." *See* ECF No. 25 at 7; ECF No. 39 at 20-21. By August 8, when the VA finally released the entire 15 minutes of video, it was redacted. There is no lawful justification for

redacting this video played in open court, and delaying its release for over six months. The VA should disclose the full requested footage immediately. In particular, the *Post* strongly objects to the following redactions, as it conveyed to Defendants in its prior status reports. The VA in the December 10, 2025 joint status report stated that it "would review and respond to Plaintiff's concerns," but refused to provide any timeframe, as it "is prioritizing its efforts to complete its responses to Plaintiff's FOIA requests in this case for which production remains ongoing." ECF No. 42 at 21. The VA does not appear to have undertaken this review and has not made any additional disclosures.

On June 30, 2026, the Social Security Administration ("SSA") sent the *Post* a letter stating that it had "determined the video compilation is not under SSA's jurisdiction for release. The U.S. Department of Veterans Affairs (VA) has jurisdiction over the requested video compilation." Previously, the VA had stated the opposite; that it referred the request to the SSA for review because "the video requested was created by the Social Security Administration," *see* ECF No. 30 at 11, making the SSA's latest assertion confusing. This jurisdictional point is, however, moot given that the VA has released the video in redacted form. The VA should now be directed to release the video without redactions.

**The *Post* requests that the Court order the VA to disclose these records by August 31, 2026 at the latest.**

**Redactions of the Kilpatricks' Faces.** The VA's August 8, 2025 letter stated that it redacted the faces of individuals shown in the video pursuant to FOIA Exemptions 6 and 7C. The VA previously agreed not to blur the subjects of its investigations – instead blurring only third parties such as passersby and friends. Now, however, the VA has blurred the faces of defendant Kinsley Kilpatrick and his wife/co-defendant Tracie Jeanne Kilpatrick in this video.

Like Kinsley Kilpatrick, Tracie Jeanne Kilpatrick is a subject of this investigation. They were co-defendants, both pleaded guilty to conspiracy to defraud the VA and Social Security Administration, and were sentenced on the same day, before the same judge. While the *Post* continues to object to the VA's third-party redactions, the VA's decision to now blur the Kilpatricks' faces is at odds with both the law and its own prior releases. The VA has not acknowledged or explained this discrepancy. Underscoring the VA's inconsistencies, on June 27, 2025, it released versions of three clips that are part of this 15-minute video compilation *without* blurring Kinsley Kilpatrick's face. Yet six weeks later, his face was inexplicably blurred in those same clips, while people in the background are now visible. *See* ECF No. 39 at 22. Again, there is no basis for making *any* redactions to this video that has been played in open court, but blurring the Kilpatricks' faces is especially unwarranted and unlawful.

**Redactions of VA Auditor's Face.** The VA also blurred the face of the VA examiner in this video. Yet public court records from the *Kilpatrick* case show that the VA examiner signed a consent form agreeing to be recorded by VA-OIG, eliminating any purported privacy concerns. This redaction, too, is especially unwarranted.

**Missing Audio.** There is no audio for all but the last 1:20 of the 15-minute video. The August 8 release letter that accompanied the video did not acknowledge or explain the lack of audio. If the VA has intentionally removed the audio, it has not provided any basis for doing so, nor is there any justification given that, again, this video was played in open court. If the VA has removed the audio by mistake, the *Post* requests that the VA promptly provide a complete copy of the video with audio. The VA has released audio for other videos responsive to this request, so the lack of audio in this instance appears to be unwarranted. The VA still has not provided an explanation for whether the audio was withheld accidentally or intentionally and on what basis.

**The *Post* asks the Court to order the VA to disclose the remaining video footage responsive to this request, without redactions of the Kilpatricks' or VA examiner's faces and with audio, as well as to submit another status report, by August 31, 2026.**

**VA's Position**

As the VA previously reported in the parties' last joint status report, there are no records that remain to be processed in response to this request, which EOUSA referred to the VA for direct response. *See* Dec. 10, 2025 JSR (ECF No. 42) at 20-21. Plaintiff's statement above spills a lot of ink on what is, at bottom, a discrete dispute as to the application of certain redactions applied to videos produced in response to Request 10. Plaintiff demands resolution of this issue immediately but does not explain why. Curiously, Plaintiff has agreed to table its disputes over redactions in other FOIA requests at issue in this case until the VA completes its production of records responsive to Requests 3 and 7. Yet, Plaintiff seems to refuse that same course of action for this Request.

Simply put, there is no reason why the parties' dispute on redactions applied to video responsive to Request 10 cannot take a similar approach to the parties' resolution of disputes over redactions at issue in Requests 2, 4, 5, and 6, above. Following the parties' approach to these other Requests, the VA agreed that it would review and respond to Plaintiff's concerns regarding any redactions applied to material contained in a 15-minute video, produced in response to this request, but after it completes its response to Plaintif's requests in this case for which production remains ongoing. Specifically, after production in response to Requests 3 and 7 is complete, the VA will address Plaintiff's concerns regarding records already produced in response to this request, including Plaintiff's issues regarding the 15-minute video, and any other issues that Plaintiff has with production to narrow the scope of issues that remain in this case.

14

To respond to Plaintiff's objections, for the reasons just explained, the Court should deny Plaintiff's request to order the VA to disclose the remaining video footage responsive to this request, without redactions by July 1, 2026. Again, there is no authority on which the Court can order the release of withheld material prior to briefing on any applicable exemptions and no basis to support an accelerated production schedule, which is unreasonable. Nonetheless, as described above in Request #7, the VA has agreed to re-review the Kilpatrick videos and if it determines necessary, re-release the Kilpatrick videos before the date of the next joint status report.

## III.    Request for Production Order and Further Joint Status Reports

### The *Post*'s Position

Entry of production orders and orders requiring frequent status reports is appropriate and commits the parties to advancing this case and clarifying the issues in dispute. The *Post* therefore requests that the Court order the parties to submit another status report **on August 31, 2026** and:

- Order a briefing schedule for summary judgment, provided that the VA confirms it has completed its review and release of records responsive to each of the *Post*'s requests;

- Order the VA to show cause by August 31, 2026 why the Court should not order the remaining 13 Hoover videos responsive to **Request No. 7** released without his face blurred; and

- Order that by August 31, 2026, the VA shall release a copy of the 15-minute video responsive to **Request No. 10** with audio and without the Kilpatricks' or VA examiner's faces blurred.

**VA/EOUSA Position**

Defendants refer the Court to its specific objections to Plaintiff's proposed orders in the text addressing the status of each Request above and states that Plaintiff, once again, cites no bases to support its assertions that the Court should enter production orders in this matter to (1) accelerate the release records that the VA is currently diligently processing, (2) produce records that the VA has already produced, or (3) disclose material that the VA withheld pursuant to FOIA exemptions, the merits of which cannot be determined until the Court rules on summary judgment. As Defendant states above, the entry of such orders is unwarranted where the VA has been acting diligently to process all media and records gathered in response to Plaintiff's request and where plaintiff can point to no reason for urgency, *see Open America*, 547 F.2d at 615.

Accordingly, the VA asks that the Court enter an order permitting the VA to file a further status report, unilaterally, or by way of a joint status report, if necessary, by **August 31, 2026** to address the status of the sole remaining records that remain to be processed in this case, which is responsive to Requests 7 and and 10, to apprise the Court as to the parties' efforts to narrow the remaining issues regarding the VA's productions to date. In that status report, the VA would ask that the Court order the parties to limit the page number and argument to only the issues they intend to brief. At that time, the VA anticipates that it will have completed all processing, re-review, and re-releases and will be ready to propose a briefing schedule. Defendants reiterate that summary judgment is the appropriate vehicle for Plaintiff's grievances and to the extent Plaintiff requests specific relief from this Court here, such requests are inappropriately pled in the context of a joint status report; particularly where the parties have previously agreed to address all objections at once after all outstanding processing has been completed.

Dated: July 30, 2026

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


*/s/ DRAFT*

Charles D. Tobin (#455593)
**BALLARD SPAHR LLP**
1909 K Street NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Facsimile: (202) 661-2299
tobinc@ballardspahr.com

Sasha Dudding (#1735532)
**BALLARD SPAHR LLP**
1675 Broadway, 19th Floor
New York, NY 10019
Telephone: (212) 223-0200
Facsimile: (212) 223-1942
duddings@ballardspahr.com

*Counsel for Plaintiff WP Company LLC*
*d/b/a The Washington Post*

By: */s/ DRAFT*

TARA DERBISZ
Assistant United States Attorney
U.S. Attorney's Office for the
District of Columbia
601 D Street, N.W.
Washington, D.C. 20530
202-809-0784
Tara.derbisz@usdoj.gov

*Attorneys for the United States*

17